H. Frank Noyes *v.* Onolette G. Noyes et al.

October Term, 1939.

Present: Moulton, C. J., Sherburne, Buttles and Sturtevant, JJ.

Opinion filed November 7, 1939.

*Christopher A. Webber* for the plaintiff.

*Jones & Jones* for the defendants.

SHERBURNE, J. The plaintiff seeks to enjoin his former wife, Onolette G. Noyes, and Elwin N. Smith, a deputy sheriff, from proceeding with the levy of an execution on an alimony judgment against the plaintiff's property in this state. The case comes here upon the plaintiff's appeal from the dismissal of his bill of complaint.

From the agreed statement of facts it appears that the plaintiff and Onolette G. Noyes were married on June 26, 1934, and thereafter lived together in Rutland. On October 13, 1934, she filed a petition for separate maintenance, personal service of which was made upon him, and an order thereon was issued and personally served upon him on October 31, 1934, that he pay her twenty dollars per week alimony. After the service of this order upon him Noyes left Vermont, and has resided in the State of California since. He has never paid anything upon this order. In 1936, Noyes instituted an action for annulment in California. This action was dismissed and Mrs. Noyes had judgment for counsel fees and costs.

On July 30, 1937, Mrs. Noyes filed a libel for divorce against Mr. Noyes in Rutland County Court, in which she asked for alimony but neither attached nor mentioned any property of the libellee. Service was made upon Mr. Noyes, who was then residing in California, by the delivery to him there of copies pursuant to P. L. 2084. Mr. Noyes did nothing about appearing in this action, except that he and his attorney joined with Mrs. Noyes and her attorneys in filing in said court on November 26, 1937, a stipulation which reads as follows:

"STATE OF VERMONT,
RUTLAND COUNTY, SS.

Onolette Noyes )

                       Rutland County Court,

   v.

                       Docket No. 13218

H. Frank Noyes )

## STIPULATION

It is hereby stipulated and agreed by and between Onolette J. Noyes, the libellant in the above entitled cause, and H. Frank Noyes, the libellee: that in the event a divorce is granted in the above entitled cause, and before the order is entered, the libellee shall forthwith pay to the libellant the sum of $1150 in lieu of all further alimony, counsel fees or expense money and as a full property settlement between said parties.

It is understood that the settlement of $1,000 is to be made on the action for separate maintenance now pending in Rutland County Court, Docket No. 12673 and that upon said payment said order shall be vacated in said case as settled in full, and the action will be forthwith discontinued.

The sum of $150 shall be paid to the libellant by the libellee as counsel fees and expense money in an action now pending in the Superior Court in the State of California in and for the County of Los Angeles in which the libellee is set forth as plaintiff and June Noyes as defendant, said action being a petition for annulment and in which action the defendant entered her appearance and contracted certain attorneys' fees; and an order being made by said Court to pay certain attorneys' fees which has never been complied with and upon the payment of said sum of $150 this order shall be vacated on behalf of the defendant; and that the libellee agrees to see that the action is discontinued.

This stipulation is entered into between the parties as a complete settlement of all differences up to the present time and is in lieu of all alimony, counsel fees and expense money, past, present and future.

Dated this 26th day of Nov. 1937.

Attest: JONES & JONES              ONOLETTE NOYES
      *Attorneys for Libellant.*             *Libellant.*

Attest: B. L. STAFFORD              H. FRANK NOYES
      *Attorney for Libellee.*              *Libellee.*"

Nothing has ever been paid according to this stipulation.

The divorce case came on for hearing on November 26, 1937, and was held open with the court, and further hearing on the matter of alimony was had on April 9, 1938, at which time a divorce was granted and judgment entered for $5,000 alimony to be paid forthwith. The order for alimony recited the failure of the libellee to make any payments pursuant to the order in the suit for separate maintenance and that the libellee was a beneficiary under a trust set up in the will of his late father, Hiram F. Noyes, and ordered that he be restrained from disposing of any of the assets of the estate until the judgment for the payment of alimony was complied with, and further ordered that the alimony ordered to be paid should be a lien on all of the real and personal estate of the libellee in the City of Rutland, and upon whatever interest he had in the estate of his late father, and upon certain real estate particularly listed which was inventoried by the trustees of said trust.

Under the trust above referred to numerous parcels of real estate were given to trustees to care for the same and pay the net rent, income and increase thereof to the widow of the testator during her natural life, and at her decease the trustees were directed to divide and distribute the trust estate between the testator's three children, of which H. Frank Noyes the plaintiff is one, in equal proportions, share and share alike; providing, however, that in case of the death of any of said children before the death of the widow, the share of such deceased child should be divided and distributed to the heirs of such child living at the decease of the widow. The original trustees having resigned or deceased, the three children of the testator are now the acting trustees by virtue of their appointment on June 1, 1933. These trustees have not filed their final account of the trust in the probate court, nor have they been discharged as such, nor have they divided and distributed the trust property to the beneficiaries. The widow died on November 14, 1938, since which date the probate court has made no order in the trust estate. On December 14, 1938, the several parcels of real estate were ordered sold in satisfaction of the alimony judgment and the clerk of the court was ordered to issue an execution to carry out the order of sale.

Only two points are briefed by the plaintiff, viz.: 1. ''The

judgment for alimony rendered as it was against a non-resident served without this State was void, since libellee made no appearance and his property, if any within this State, was not proceeded against''; and 2, ''That even if the judgment were valid, the interest of H. Frank Noyes in the property levied upon was not subject to execution, the same being in the hands of trustees under an active trust.''

██ A decree for the payment of money as alimony stands on no different ground than any money judgment, and without service of process upon the libellee in this State, or appearance, is inoperative except for the purpose of subjecting the property of the libellee, which has in some manner first been brought within the control of the court by the proceedings, to its payment. *Prosser* v. *Warner*, 47 Vt. 667, 19 A. R. 132; *Smith* v. *Smith*, 74 Vt. 20, 51 Atl. 1060, 93 A. S. R. 882; *Wilder* v. *Wilder*, 93 Vt. 105, 106 Atl. 562. Where, as in this case, the libel merely asks for the award of alimony, the situation is no different from any action for the recovery of money where property of the defendant is not attached or in any way brought under the jurisdiction of the court, and where the judgment obtained therein, in the absence of personal service within the State, or appearance, can have no relation to the defendant's property, but is entirely personal and void. *Pennoyer* v. *Neff*, 95 U. S. 714, 25 L. ed. 565. See, also, cases cited in annotation under the heading ''Where property is not proceeded against'' in 29 A. L. R. 1385, 64 A. L. R. 1393, and 108 A. L. R. 1303. It follows that the service was inadequate to support the judgment for alimony.

██ Did the stipulation filed by the parties in the divorce action constitute an appearance by this plaintiff, the libellee therein? Stipulations or agreements entered into between the parties or their counsel with reference to a pending suit are usually regarded as amounting to a general appearance, unless the subject matter and nature of the stipulation are such that they in no way recognize the case as being in court. 6 C. J. S. 33. We cite a few illustrative cases. In *Wetmore State Bank* v. *Courter*, 97 Kan. 178, 155 Pac. 27, a stipulation giving the plaintiff more time to amend his petition was held to constitute an appearance. In *In re Parker's Estate*, 268 Mich. 79, 255 N. W. 318, a stipulation to put a case on the jury docket was so

held. In *City of St. Louis* v. *Senter Commission Co.*, 336 Mo. 1209, 84 S. W. (2d) 133, a stipulation as to amendments was so held. In *Riker* v. *Kilinski*, 309 Pa. 188, 163 Atl. 526, a stipulation extending the time limit for filing an affidavit of defense was so held. But in *Dauphin* v. *Landrigan*, 187 Wis. 633, 205 N. W. 557, a stipulation that the defendant should have time to appear did not constitute an appearance.

*Andrew* v. *Buck*, 97 Vt. 454, 458, 124 Atl. 74, discusses somewhat what constitutes a general appearance, saying that no infallible test exists for determining this question in all cases, and refers to the test adopted in *Merchant's Heat & Light Co.* v. *J. B. Clow & Sons*, 204 U. S. 286, 51 L. ed. 488, 27 Sup. Ct. 285, of whether the defendant becomes an actor in the cause; and gives as common illustrations of the assumption of the role of actor in a suit, taking a trial on the merits, taking a continuance, challenging the pleadings by demurrer without limiting the issue to the question of jurisdiction, and filing any pleading that puts in issue the merits of the cause. As said in 3 Am. Jur., Appearances, § 10, ''A general appearance may arise by implication from the defendant's seeking, taking, or agreeing to, some step or proceeding in the cause, beneficial to himself or detrimental to the plaintiff, other than one contesting the jurisdiction only. The purpose of the appearance, however, must bear some substantial relation to the cause. In other words, it must be a purpose within the cause, not merely collateral thereto.'' Another good test is that given in *Hammond* v. *District Court*, 30 N. M. 130, 228 Pac. 758, 39 A. L. R. 1490, as any action on the part of a defendant, except to object to the jurisdiction, which recognizes the case as in court. The expression ''which recognizes the case as in court'' means that it recognizes the case as pending in court with jurisdiction of the subject matter and of the parties. In order to do this, the defendant must seek some affirmative relief at the hands of the court, or he must ask a favorable decision upon some matter of a substantive character, or endeavor to secure a continuance or postponement.

Referring to the stipulation in question, it was filed in court by both parties thereto, it is headed with the name of the case, it takes into consideration the event that a divorce may be granted, and though the sum agreed to be paid was to be applied upon other causes, it stipulates that such settlement shall be in

lieu of alimony, counsel fees and expense money, past, present and future. From this it appears that the libellee may have feared that the court might grant alimony, or that some supplemental proceedings might be brought to secure alimony, and it is apparent that he entered into this stipulation with the idea of barring the libellant from getting anything further than what she was entitled to in the other causes. Had he performed as he agreed the stipulation would have made it difficult, if not impossible, for the libellant to get anything further in any proceeding she might bring. Tested by the above rules the libellee took a step in the divorce action which was within the cause and beneficial to him; he recognized the cause as in court and became an actor therein. As a result of the filing of the stipulation the court obtained jurisdiction to award alimony.

■■ We now come to the question as to whether the interest of the plaintiff in the trust property is subject to sale upon the execution. At common law there was no process but against legal estates, so that uses and trusts, and equities of redemption, and all merely equitable interests in lands or personal property were considered only as creatures of equity, and were not liable to be taken and sold on execution. *Russell* v. *Lewis,* 2 Pick. (Mass.) 508, 510. See, also, 23 C. J. 340, § 81, and cases cited. Under P. L. 2259 only such real estate as is within the terms ''houses, lands and tenements belonging to a person in his own right in fee, or for his own life, or the life of another, paying no rents for the same, or for years, or an unlimited time paying rents for the same, and rights in equity of redeeming lands mortgaged, or in reversion or remainder,'' may be taken and sold on execution. It is clear that except for equities of redemption execution at law is confined to legal estates in this state.

■ Although there can be no question, but that during the life of the testator's widow the trust was an active one, the defendants contend that upon the widow's death it became a passive or dry trust, and that the legal title vested in the three children, of whom the plaintiff is one. This might be true in jurisdictions which have adopted the Statute of Uses, 27 Henry VIII, c. 10, or enacted similar statutes, which operate to make certain conveyances creating only an equitable estate effective to pass the legal title, and to restrict the creation of trusts. See annotations, 16 L. R. A. (N. S.) 1148-1162. Even under these

statutes there is a question whether under the terms of this trust that the "trustees shall divide and distribute" the trust estate between the testator's children, the legal title can vest until there has been a formal conveyance. See 65 C. J. 522, under heading "Duty to convey" and cases cited. The Statute of Uses, however, has not been adopted in this State. *Gorham* v. *Daniels*, 23 Vt. 600; *Sherman* v. *Estate of Dodge*, 28 Vt. 26; *Johnson* v. *Barden*, 86 Vt. 19, 26, 83 Atl. 721, Ann. Cas. 1915A, 1243. Hence the cases cited from other jurisdictions, most, if not all, of which have adopted the Statute of Uses or enacted similar statutes, have little persuasive force.

Attention is called to chapter 134 of the Public Laws relative to trustees appointed by will or by the probate court. By P. L. 3023, the bond of such a trustee shall contain conditions to manage and dispose of the estate according to law and the will of the testator; and to settle his accounts with the probate court at the expiration of his trust, and to pay over and deliver the estate and effects remaining in his hands to the persons entitled to the same, according to law and the will of the testator. By P. L. 3041, trustees shall perform the duties specified in their bonds. Under the will and decree of the probate court the trustees hold the legal title to the trust estate and cannot be compelled to surrender it to a beneficiary or one claiming under him until ordered to do so by the probate court. *Foss* v. *Sowles*, 62 Vt. 221, 228, 19 Atl. 984. But the trustees may vest in the beneficiaries the title and possession of their shares without an order of the probate court, and if they pay the right parties their proper shares they are protected. *Bacon, Receiver* v. *Barber*, 110 Vt. 280, 289, 6 Atl. (2d) 9; *In re Clark's Estate*, 100 Vt. 217, 221, 222, 136 Atl. 389; *In re Scott's Account*, 36 Vt. 297, 300.

The defendants call our attention to *Bacon* v. *Barber, supra; Harris* v. *Harris*, 82 Vt. 199, 72 Atl. 912; *Burton* v. *Provost*, 75 Vt. 199, 54 Atl. 189; and *Re Tucker's Will*, 63 Vt. 104, 21 Atl. 272, 25 A. S. R. 743; about the vesting of estates, but all that can be claimed here for these cases is that the beneficial interest vested in the three children upon the death of the testator's widow.

Because the trustees and beneficiaries are the same persons the defendants contend that there has been a merger of the legal and equitable estates in the trust property. "Where

the legal and equitable estate in the same land becomes vested in the same person, the equitable will merge in the legal estate; for a man cannot be trustee for himself, nor hold the fee, which embraces the whole estate, and at the same time hold the several parts separate from the whole. But in order that this may be true, the two estates must be commensurate with each other; or the legal estate must be more extensive or comprehensive than the equitable. The equitable cannot merge in a partial or particular legal estate.'' Perry on Trusts, 7th ed., § 347. Here the two estates are not commensurate for the three children hold only a joint estate as trustees, whereas as beneficiaries of the trust they hold an estate in common. This slight difference in the character of the legal and equitable interests may justify the refusal to apply merger except in the instances of a single person as sole trustee and sole *cestui.* Bogert on Trusts, § 129; Scott on Trusts, § 995. In *Hance's Estate,* 69 Pa. Super. 432, two sons of the testator under a spendthrift trust were joint trustees and also *cestuis que trustent.* The court said there could be no valid trust where the trustee is also *cestui que trust.* But the present case did not come within the rule. The custody and control was in them jointly; there being a joint control the income as received did not at once. become the property of either, but a division or settlement was contemplated. See, also, *Sturgis* v. *Citizen's Nat. Bank,* 152 Md. 654, 137 Atl. 378; and *Harris* v. *Harris,* 205 Pa. 460, 55 Atl. 30. There is no merger. This holding is also supported by the Restatement of Trusts, § 341, comment h.

The beneficial estate had vested and each of the three children had an interest that they could convey or devise, 26 R. C. L. 1264, § 112; and it may well be that the plaintiff's beneficial interest can be reached in equity for the satisfaction of the alimony judgment. See *Waterman* v. *Cochran,* 12 Vt. 699; *Woods* v. *Scott,* 14 Vt. 518; *Dewey & Webb* v. *Long,* 25 Vt. 564; *Buck* v. *Gilson,* 37 Vt. 653; *Foster* v. *Foster,* 56 Vt. 540. Consequently we will not make final decree here.

*Decree reversed and cause remanded. Unless the defendant Onolette G. Noyes on or before December 15, 1939, commence such steps in equity as she is advised will subject the plaintiff's beneficial interest in the trust property to the payment of her alimony judgment, let the court of chancery enter decree in favor of the plaintiff. Let the plaintiff recover his costs in this Court.*